```
 1                 UNITED STATES DISTRICT COURT

 2                     DISTRICT OF ARIZONA

 3   United States of America,       )
                                     )
 4              Plaintiff,           )   4:23-cr-1495-AMM-EJM
                                     )
 5         vs.                       )
                                     )   Tucson, Arizona
 6   Jeffrey Allen Koistinen,        )   August 22, 2025
                                     )   11:10 a.m.
 7   _____Defendant.___   )

 8                 TRANSCRIPT OF PROCEEDINGS
                      STATUS CONFERENCE
 9
              BEFORE THE HONORABLE ERIC J. MARKOVICH
10                 UNITED STATES MAGISTRATE JUDGE

11   APPEARANCES:

12   For the Plaintiff:
          Nathaniel Walters
13        U.S. Attorney's Office
          405 West Congress Street, Suite 4800
14        Tucson, AZ 85701

15   For Defendant Jeffrey Koistinen:
          Nicholas M. Loncar
16        Tucson Defenders
          2030 East Broadway Boulevard, Suite 123
17        Tucson, AZ 85719

18        Joel M. Chorny
          Law Office of Joel Chorny, PLLC
19        177 North Church Avenue, Suite 1100
          Tucson, AZ 85701

20

21   Transcribed by:
          Cindy J. Shearman
22        405 West Congress Street, Suite 1500
          Tucson, AZ 85701
23        520-205-4286

24            Proceedings were digitally recorded
            Transcript prepared by transcriptionist
25
```

```
 1                    P R O C E E D I N G S
 2            (Call to order of court, 11:10 a.m.)
 3            CLERK:  In criminal case number 23-01495, Jeffrey
 4    Allen Koistinen, on for a status conference.
 5        Counsel, please state your appearance.
 6            MR. WALTERS:  Good morning, Your Honor.  Nate Walters
 7    on behalf of the United States.
 8            THE COURT:  Good morning.
 9            MR. LONCAR:  Good morning, Your Honor.  Nicholas
10    Loncar on behalf of Jeffrey Koistinen in this matter.  Also
11    present independent counsel to advise Mr. Koistinen as to the
12    nature of the potential conflict --
13            MR. CHORNY:  Joel Chorny, Your Honor, with the law
14    office of Joel Chorny.
15            THE COURT:  Good morning.
16            MR. LONCAR:  And also present, the attorney who
17    represents Jeffrey in the retrial marijuana case now involving
18    Brandon Koistinen in the event that any questions need to be
19    answered about that.
20            THE COURT:  Okay.  Who is that?  Mr. Damianakos?
21            MR. KATSARELIS:  That's correct, that's a compliment,
22    Judge.  I will tell Elias.
23            THE COURT:  No, it's the other -- the other Greek
24    name.
25        MR. KATSARELIS:  It's Efthymios Katsarelis.
```

UNITED STATES DISTRICT COURT

1          THE COURT:  I'm sorry, Mr. Katsarelis.

2          MR. KATSARELIS:  I'll get a copy of this hearing,

3    Judge.

4          THE COURT:  I don't know who I insulted.

5      Okay.  All right.  So just -- thank you.  I thought maybe

6    Mr. Harwin and Brandon were going to be on the phone but that's

7    okay.

8      Okay, so just to recap, the government a while ago filed a

9    motion asking the court to conduct a potential conflict of

10   interest inquiry.  We've had several hearings on that.

11   Mr. Loncar, ultimately at our last hearing, said he obtained an

12   opinion from the state bar and, based on their advice, he felt

13   that he could remain in the case but he would need an

14   independent attorney to do any cross-examination of Brandon

15   Koistinen if he is a witness in the case.

16     I had asked you guys to do some research about this having

17   a third-party attorney or an independent attorney come in to do

18   that.  I did provide you guys with a couple of cases, a couple

19   of Fifth Circuit cases, *United States versus Miranda*, which is

20   a 2025 case, that relies heavily on a 2008 case, *United States*

21   *versus Burns*, also in the Fifth Circuit.  There's a District of

22   Columbia case, *Lorenzana-Cordon*, and those three cases approved

23   of solving a conflict or potential conflict with independent

24   counsel.

25     I did cite to another case, *United States versus Pizzonia*

```
 1   out of the Eastern District of New York but after I read that
 2   again, I realized that I don't think that was really dealing
 3   with this issue.
 4       So there is case law.  I didn't find anything in the Ninth
 5   Circuit but there is case law to support this arrangement of
 6   having a third-party attorney essentially be walled off and --
 7   well, I guess the wall would apply both ways.  Mr. Loncar could
 8   not share any information relating to the representation of
 9   Brandon Koistinen with Mr. Chorny nor could Mr. Chorny seek out
10   any of that information from Mr. Loncar.
11       I take it you guys didn't find any other case law since I
12   didn't see any short pleadings citing some cases?
13            MR. WALTERS:  I didn't find anything, Your Honor,
14   other than just more specific conflict issues but other than
15   what the court gave us, I wasn't able to find anything with
16   regard to the solution that the defense has proposed.
17            THE COURT:  Okay.
18            MR. LONCAR:  Likewise.  I mean, I did a search.
19   Perhaps I should have, after looking at the cases the court
20   gave, specifically looked at some of those -- some of that
21   terminology, that second counsel and Chinese wall, which I
22   didn't do but I will reiterate that it was a recommendation to
23   me by the state bar, and so while that doesn't specifically
24   apply to representation within federal court, they are the
25   ethical rules that govern and they specifically did advise me
```

1    that that would further alleviate some of the conflict.

2            THE COURT:  Okay.  In the cases basically that are

3    proving this, they cite to some cases where courts have not

4    approved of that but in -- there's two reasons courts have

5    approved the third-party counsel.  One is kind of the distrust

6    of the conflicted attorney about the ability to maintain

7    confidences.  I don't have -- I have no reason to have that

8    concern here.

9        There was also -- there's also kind of a rationale that the

10   defendants themselves didn't really understand the waiver or

11   didn't give a clear and unambiguous waiver of any conflict.

12       So what I've been provided today is a letter from

13   Mr. Koistinen from Mr. Loncar and then, on the second page of

14   that -- and that letter lays out the nature of the conflict and

15   the proposal that a third-party attorney conduct any

16   cross-examination of Brandon Koistinen if he ends up

17   testifying.  And I guess the proposal would be that Mr. Chorny

18   would be retained to do that.

19       And additionally, Mr. Chorny has provided independent

20   counsel to Mr. Koistinen regarding the conflict, I'm sure

21   Mr. Loncar did as well, but I think it was very wise of

22   Mr. Loncar to get Mr. Chorny involved to provide independent

23   counsel to Mr. Koistinen about the conflict and the effect of

24   this third-party attorney doing the cross-examination.

25       And what the letter represents, Mr. Chorny, is that you've

1  gone over those issues with Mr. Koistinen, he understands them,

2  wants to waive any conflict.  And the only way I think to do

3  that is to have you be involved in the case and cross-examine

4  Brandon Koistinen if he testifies.

5      Did I summarize that correctly and, if so -- if not, tell

6  me, if so, if you want to add anything?

7          MR. CHORNY:  I think you did, Your Honor.  I don't

8  have anything to add.  I think you've captured it pretty well.

9          THE COURT:  Okay.  So, Mr. Koistinen, let me just

10  confirm, you met with Mr. Chorny; is that right?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  And you understand what the conflict is?

13          THE DEFENDANT:  Yes, yes, Your Honor.

14          THE COURT:  Okay.  So Mr. Loncar represented you and

15  your son jointly preindictment in, I guess, what was a state

16  investigation on the -- what led to drug charges.  And then

17  Brandon was a witness at your state trial, the first trial, and

18  then this conflict issue got raised before the second trial.

19  Mr. Loncar did withdraw in that case.

20      However, even though this case has nothing to do with those

21  state charges, we are all concerned about a potential conflict

22  that could ripen into an actual conflict because Mr. Loncar

23  obviously obtained privileged and confidential information from

24  your son during his representation, which admittedly was

25  relatively brief.  And Mr. Loncar cannot ethically use that

1    information in defending -- disclose it or use it in defending

2    you in this case.

3         The proposed solution recommended by the Arizona State Bar

4    is to get a third-party attorney involved, that would be

5    Mr. Chorny.  Mr. Chorny, he may do more on the case than

6    cross-examine Brandon but at a minimum he would cross-examine

7    your son if he testifies.  Any investigation to do that

8    cross-examination would be his and his alone.  He could discuss

9    overall strategy with Mr. Loncar but neither -- Mr. Loncar

10   can't share any confidential information with Mr. Chorny nor

11   can Mr. Chorny seek out that information.

12        And, again, I know there's a lot of legal terminology, but

13   do you understand all that?

14             THE DEFENDANT:  Just one second, Your Honor.

15             THE COURT:  Yeah, go ahead.

16             MR. LONCAR:  Maybe I can clarify a little bit since we

17   didn't know how the court would rule ultimately on the conflict

18   issue and my remaining or my comfort with remaining on the case

19   was dependent on the court permitting second counsel for that

20   purpose.

21        It has not yet been determined that Mr. Chorny would be the

22   one to serve in that role.  He's been retained at this point

23   for the limited purpose of advising as to the conflict.  He may

24   very well also serve in the role as the second counsel to

25   conduct that cross-examination.  However, Mr. Katsarelis, who

1    represents Mr. Koistinen in the matter involving Brandon, may

2    have more familiarity with Brandon, which could be good or bad,

3    and so the decision on who will serve in that later role has

4    not yet been made because it wasn't ripe until just now.

5        And so, Mr. Koistinen will discuss with these two and

6    possibly others who he might wish to have conduct

7    cross-examination of Brandon.

8            THE COURT:  Okay.  Thank you for cleaning that up.  I

9    was confused.

10           MR. LONCAR:  Was that your understanding?

11           THE DEFENDANT:  Yep, yep, but I understand everything

12   you said then, too.

13           THE COURT:  Okay.  So, I'm sorry, I thought Mr. Chorny

14   was taking on both roles and maybe he eventually will.  Yet, I

15   think in my order I had asked you to have whoever was going to

16   be the third-party counsel or independent counsel be here but,

17   to be honest, I think -- I'm glad you went and got Mr. Chorny

18   to talk to Mr. Koistinen 'cause I do think -- I was thinking

19   that might be something I would have to ask you to do so I'm

20   glad you did it in advance of this hearing.

21       And then Mr. Koistinen can talk with you, Mr. Loncar,

22   assuming I allow this to go forward, about who he wants to

23   retain as that independent counsel, Mr. Chorny, Mr. Katsarelis,

24   Mr. Damianakos -- no, I'm just kidding -- or someone else.

25       Okay.  So, Mr. Walters, let me get your thoughts now that

```
1    there's been some -- well, we have some case law supporting
2    this and this -- Mr. Chorny having this independent
3    consultation with Mr. Koistinen.
4            MR. WALTERS:  Thank you, Your Honor.  I mean, the
5    government obviously continues to strongly object to this
6    process taking part this way.  I think, number one, it -- this
7    will create, from the government's standpoint, this will create
8    a stench of not upholding the strongest and ethical integrity
9    of this case, especially when we're talking about in a federal
10   courthouse.  And I think the court, according to this case law,
11   has a duty to preserve those interests, and I'm certainly not
12   suggesting that the court isn't trying to preserve those
13   interests, but it is a duty that the court must preserve
14   nonetheless.
15           THE COURT:  But I also have to preserve
16   Mr. Koistinen's right to counsel of choice.
17           MR. WALTERS:  Absolutely.
18           THE COURT:  And these cases provide a mechanism to do
19   that, essentially to balance the -- Mr. Koistinen's counsel of
20   choice with this -- at this point, I will say, Mr. Walters,
21   there isn't actually a conflict yet, okay?  Because for a
22   couple of reasons.  I think it would be premature, even if we
23   didn't have the third-party attorney, to boot Mr. Loncar off
24   the case for a couple of reasons.  We don't know if Brandon
25   will be permitted to testify.  You could decide ultimately not
```

1    to call him as a witness.  If Mr. Loncar wins the suppression

2    motions, conceivably the case goes away.  So those -- and

3    ultimately, if he loses the suppression motions, perhaps

4    Mr. Koistinen will plead guilty.

5        What I'm saying is, short of this, you know, with the

6    uncertainty of whether the case is going to go to trial, I

7    think it would be unfair for me to conflict off Mr. Loncar.

8            MR. WALTERS:  Your Honor, I completely agree obviously

9    that Mr. Loncar -- sorry, Mr. Koistinen has a right to have

10   counsel of his choice, and I understand that the court has a

11   duty to protect that right as much as possible.  But that is

12   not an absolute right under the Sixth Amendment to the

13   constitution, and I think that was clear from all of the cases,

14   both the ones that supported the court's analysis as well as

15   some of the courts -- some of the cases that were submitted and

16   cited by the government in the *Lorenzana-Cordon* case.

17       And I know the court said it didn't believe that that case

18   applied but I actually felt that that was one of the better

19   cases of outlining the issues in this case.  And I think, you

20   know, in looking at *Lorenzana*, I think what I took from that

21   case was that there was some type of, you know, some distance

22   between the former representation and the current

23   representation.  And that's -- I think the biggest factor for

24   the court in that case, too, was that there was -- the attorney

25   didn't have information about what the witness planned to

1    testify about at court -- at the trial while representing the

2    current client.  That's not the same case here.

3        And I think that's -- I think that's highlighted because on

4    -- I'm going to try to find the pincite to make it easier for

5    the record.  And, again, I'm referring to *Lorenzana-Cordon*,

6    that's 125 F.Supp.3d, 129.  For whatever reason, Your Honor,

7    this didn't print off the -- oh, on pincite 136 there are a

8    list of cases that were cited by the government in that case

9    showing that that would have been -- that the attorney should

10    have been disqualified in that case.

11        And the court in that case specifically disagreed for one

12    reason saying that, that in those cases cited by the

13    government, the conflicted attorney knew the nature of the

14    likely witness testimony, but that wasn't the case in

15    *Lorenzana-Cordon*.  That is what we have here.  And so I think

16    it's, I think it is distinguishable from this case, and if the

17    court wants to rely upon this issue, I think it is different

18    from the cases where there has been an approved mechanism

19    through a third party to cross-examine the witness because we

20    have a situation where Mr. Loncar knows exactly what is going

21    to be testified to.  And so --

22            THE COURT:  Why does that matter?

23            MR. WALTERS:  Because -- and that's why we go back to

24    we have to preserve the integrity of the case, we have to

25    preserve the integrity of ethical, of ethical limitations.  And

1    there is still going -- and I think the court alluded to this

2    last time, too -- Brandon is still going to get on the stand

3    and have zero trust whatsoever that if he is cross-examined

4    about something that he knows that he told Mr. Loncar about,

5    whether it's just something that was learned through the

6    discovery or not, that's still going to be an accusation that

7    is levied against the defense at that point.  Whether the court

8    has concerns or not I think would be irrelevant at that point

9    from Brandon Koistinen's standpoint.

10        I also think that -- I think procedurally, having this

11   third-party lawyer come in and cross-examine Brandon or Brandon

12   Koistinen is problematic from the sense of how this is going to

13   appear to a jury.  How do we explain to a jury that for every

14   single witness we have Mr. Loncar handling directs and

15   cross-examinations except for Brandon Koistinen where we have

16   another attorney --

17        THE COURT:  You don't need to explain that to a jury.

18   I mean, there are trials where a younger attorney does one

19   witness.  The jury doesn't need to be told anything.

20        MR. WALTERS:  Sure.  But then also, as it was pointed

21   out in the *Lorenzana* case, we have, in that case, the court

22   also specifically ordered that not only would the third-party

23   lawyer cross-examine the conflicted or the former client but

24   that if any part of opening statements or closing arguments

25   touched on, you know, that former client's testimony or

1   credibility, that the third-party lawyer had to jump in and

2   provide those statements or arguments as well.

3       And I think, again, it goes back to, I think we would have

4   to explain that to a jury because that would be an abnormal

5   situation in a trial where we're not talking about the first

6   lawyer in a dual team does, you know, like for the prosecution,

7   for example, where we do -- one attorney does an opening or a

8   closing argument and then the other attorney does the rebuttal

9   closing.  We're talking about how -- a situation where we have,

10  for example, Mr. Loncar starting in closing argument, a

11  third-party attorney jumping in, and then Mr. Loncar finishing

12  again.  That is abnormal and I think it is something that would

13  have to be explained --

14          THE COURT:  Why?

15          MR. WALTERS:  -- to the jury.

16          THE COURT:  I mean, what's the jury going to care?

17  It's not like they have experience in the law and knows that,

18  you know, oh, well, they shouldn't be able to break up closing

19  argument.

20          MR. WALTERS:  I mean, respectfully, Your Honor, with

21  that logic, why do we give a curative instruction for anything

22  at this point?

23          THE COURT:  Well, what are you going to explain to the

24  jury, that Mr. Loncar had a conflict so --

25          MR. WALTERS:  I think we would have to, and that's the

1    problem with allowing the third-party lawyer to go forward.

2         THE COURT:  I just completely disagree with that.  I

3    don't know if the district judge would be willing to do it but

4    it's certainly doable.  I mean, there may be, based on

5    Mr. Brandon Koistinen's testimony, there may be nothing to talk

6    about in closing argument but it seems to me that the

7    third-party attorney could start out and say:  Look, I'm here

8    to talk about Brandon's testimony.  I'm telling you, it wasn't

9    believable and here's why.  My colleague, Mr. Loncar, is going

10   to address some of the other evidence but I did the cross of

11   Mr. Koistinen so I'm going to talk about that.

12        MR. WALTERS:  I think the other problematic part of

13   this, Your Honor, is that the court's decision, whether it's

14   this court or district court, is not appealable to the Ninth

15   Circuit, it's not available, at least from what I could gather.

16   I couldn't find any Ninth Circuit case law on this but in other

17   circuits I found that this is not an immediately appealable

18   issue in terms of an interlocutory appeal.

19       So this is a situation where, if we do this and then it

20   comes back on appeal, we won't have the ability to determine

21   this and make this a final issue until after Mr. Koistinen

22   would, you know, be convicted in that situation.  Obviously, if

23   he's not, there is no appeal.

24       But I just -- I think there's also case law that says if

25   there is a -- if there's a dispute, if it's borderline, that

1    the court should err on the side of disqualification.  And I

2    think, again, that's opposition --

3            THE COURT:  What case law are you referring to?

4            MR. WALTERS:  Your Honor, it was in one of the cases.

5    I can find it again and I can let the court know before I walk

6    out of here but I remember specifically seeing that this

7    morning but I can have it to the court before we leave today.

8        But other than that, Your Honor, again, I just want the

9    government's objection noted for the record but I don't have

10   anything else to say other than that.

11           THE COURT:  Okay.  Mr. Loncar, did you want to

12   respond?

13           MR. LONCAR:  Yes, Your Honor, because I have really

14   had more than enough of quasi accusations by the government

15   about my ethics in reliance on someone who is a convicted felon

16   who the government is aware testified differently at trial than

17   his own prior statements, testified differently at one part of

18   the trial than he did at another part of the trial, and

19   testified differently to the proffered evidence that they have

20   given as one of the things he's going say in this case.

21       They have said that Brandon will testify that my client

22   didn't let anybody else use his computer.  He testified under

23   oath in September of 2024 that he made grower's house purchases

24   on my client's computer.

25       So, Mr. Walters is coming in here and saying that something

1    else is going to question the integrity of these proceedings,

2    when the government is trying to call a witness who they know

3    is a liar, who they have proof lied under oath; I have shared

4    those transcripts with them.  They know that he has lied under

5    oath and they want to call him as a witness to get rid of me.

6    And they still want to call him as a witness, even though

7    there's really, I mean, I still can't wait 'til we get to the

8    relevance issue which I guess I'll have to do with the district

9    court, but if anyone is damaging the integrity of the process,

10    it's the party that is purporting to call a documented liar.

11    And then still, even with all of these authorities, still

12    trying to argue what -- that I shouldn't be on the case.

13        Mr. Walters said that I do know exactly what Brandon would

14    testify to.  No, I can't because the last time Brandon

15    testified on the stand, he testified differently than his prior

16    statements and differently than his -- within the same

17    testimony.

18        And then when it comes to opening and closing, I don't see

19    a problem of needing somebody else to conduct a part of the

20    opening or closing.  My issue, my concern, the reason I believe

21    there is a potential conflict is that Brandon Koistinen, who

22    has already levied false accusations against me, would do so

23    again.  That he would sit in the witness chair, hear a question

24    he doesn't like, and say that it's something he told me before,

25    even though he didn't.

1      So, when a record of the testimony is made by the second

2  counsel who conducts the cross-examination, I would be able to

3  use that record and those statements in my closing argument

4  just fine.  And so I don't see a problem there.

5      And I would also just point out, I mean, I made a note of

6  this, it's not super related but the suppression motions are

7  not dispositive in this case in the way that they were in the

8  state court case.  They would be certainly helpful to

9  Mr. Koistinen's defense if granted but they would not result in

10  a dismissal as they did in the other matter.

11      THE COURT:  Yeah, I was actually starting thinking

12  that might be the case.  But, okay.  Let me ask you, do you

13  guys think Brandon Koistinen would be a witness at the -- on

14  any of the suppression motions?

15      MR. WALTERS:  I don't think so, Your Honor.  I think

16  those are more related to law enforcement issues rather than --

17  so I think, as far as we're concerned, we only plan to call law

18  enforcement officers.

19      THE COURT:  Okay.  I don't know if you'll call any

20  witnesses but you don't anticipate Brandon being a witness?

21      MR. LONCAR:  No, Your Honor.

22      THE COURT:  Okay.  So, I do think it's important that

23  -- 'cause I was going to chat a bit with Mr. Chorny when I

24  thought he was going to be the independent attorney because I

25  could see it -- a scenario under which -- which is why I wanted

1  to talk to a new attorney to get that attorney's comfort

2  level -- where Brandon believes that he's being cross-examined

3  based on confidential information even though it's the

4  independent attorney who's doing the cross-examination, meaning

5  that Mr. Loncar shared confidential information with the

6  independent attorney.

7      So I do think it's important for me to find out, make sure

8  the independent attorney is aware of that and is comfortable

9  taking on the representation and feels that he or she can

10 competently, effectively, and thoroughly cross-examine Brandon

11 Koistinen.

12     That's a long way of saying that I'd like to come back in a

13 week or two.  I don't know, how long do you think you need to

14 make a decision who you'd want to retain as that third-party

15 attorney?

16          MR. LONCAR:  Your Honor, so, it sounds like it would

17 be Mr. Katsarelis who had to leave for an 11:30 hearing.  He

18 did say he would be back.  My schedule through the middle of

19 September is pretty rough but we do have some dark days in my

20 murder trial.  Today was one of them.

21     But I did want to point out that I don't think second

22 counsel doing a cross in that matter would be in a much

23 different position than successive counsel and so if someone

24 completely replaced me for all purposes, they would still be

25 subject to false accusations from Brandon that I shared

1    information that I only learned because of my brief

2    representation of him in August of 2022.

3            THE COURT:  Right.  I mean, I understand what you're

4    saying in theory but this independent counsel is going to be

5    working in tandem with you on this case.  It's not like you're

6    saying, okay, here's the discovery, you know, you know, I'll

7    give you my -- you know, here's a thumbnail sketch of what's

8    going on.  This new attorney is going to need to review -- I

9    mean, you're going to be working in tandem, at least to some

10   extent, so I don't think it's exactly like a successive

11   situation.

12       Well, let me do this --

13           MR. LONCAR:  Mr. Katsarelis did say he would be back

14   after his 11:00.  I don't know.  I guess he anticipated it

15   going very quickly and not hours.

16           THE COURT:  That's fine.

17           MR. LONCAR:  But if him being here helps, I can see an

18   ETA.

19           THE COURT:  No, that's fine.

20       While we wait for him, my inclination is to find that

21   there's a not a -- well, to the extent there's a conflict or I

22   should say a potential conflict, I mean, I think there is, but

23   I think the third-party or independent counsel situation is a

24   way to deal with that in terms of protecting Jeffrey

25   Koistinen's right to counsel and preserving Brandon Koistinen's

1    conflicts.  However, I would like to get Mr. Harwin and Brandon

2    Koistinen here for another hearing.  It may be we can't even

3    set it right now so it might not even be relevant.  I think

4    I'll ask my assistant to email you guys so we can come up with

5    a date.

6        I did want -- assuming I go that route, which is what I

7    think I'm going to do, I want to talk about setting some dates

8    for the suppression motions 'cause they've been hanging out

9    there a long time.  So if you guys have your calendars, I do

10   have the following days the whole day available.  And when

11   you're ready, I'll rattle off the dates.  September 23rd, which

12   I think is probably going to be too early given your murder

13   trial.  September 23rd, September 30th, October 2nd, 3rd, or

14   4th the whole day is available.  And if you guys don't know

15   now, you can just think about it and we can talk about it when

16   we come back.

17              MR. WALTERS:  Your Honor, I just wanted to clarify, I

18   believe October 4th is a Saturday.

19              THE COURT:  Oh, you guys don't want to work on

20   Saturday?  It is a Saturday.

21              MR. WALTERS:  Happy to be here if you want me to be

22   here, Judge.

23              THE COURT:  Well, I don't want to be here.

24              MR. WALTERS:  The government is available all day on

25   the 2nd or 3rd.

```
 1              THE COURT:  Let's just say the 2nd -- yeah, I don't
 2   know how we got the 4th.
 3              MR. LONCAR:  I would be available both of those days
 4   as well, as well as September 30th.
 5              THE COURT:  Okay:
 6              MR. LONCAR:  Probably a little more time for subpoenas
 7   would be --
 8              THE COURT:  Yeah, why don't we just set it for
 9   September 2nd -- I'm sorry, October 2nd, and I'll hold the 3rd
10   in case we need more than a day.
11              CLERK:  What time on the 2nd, Judge?
12              THE COURT:  9:00 o'clock.
13              CLERK:  For a motion to suppress?
14              THE COURT:  Yeah.  There's two pending motions to
15   suppress.
16              CLERK:  Thank you.
17              THE COURT:  So, well, let's wait a little bit for
18   Mr. Katsarelis, but what my game plan would be is Karen will
19   email Mr. Harwin and Mr. Katsarelis, if he doesn't get back, as
20   well as you guys to try to pick a date in the next couple of
21   weeks to have everybody present to just firm this all up.
22         So, Mr. Koistinen, again, I'm going to talk to you more at
23   this hearing we're going to have in a week or two once you've
24   retained who this independent counsel, but I tell you, if
25   you're having -- if you have an issue with Mr. Loncar
```

1    representing you with this conflict or with this independent

2    attorney, whoever that may be, now's the time to speak up,

3    okay?

4              THE DEFENDANT:  I don't have any issues with it.

5              THE COURT:  Okay.  But I'm going to ask you that again

6    once you actually retain an independent counsel.

7              THE DEFENDANT:  Okay.

8              THE COURT:  What the government's worried about is you

9    get -- well, one of the things they're worried about is that

10   you get convicted and then your only appealable issue is a Hail

11   Mary to say:  Hey, I didn't know about this conflict.  I never

12   would have kept Mr. Loncar on the case and this independent

13   attorney.  You know, I'm just saying that's what they're

14   worried about and that's what this case law addresses where we

15   did what we're doing here today, we have an independent

16   attorney going to do the cross-examination of the witness that

17   creates a conflict.

18       The defendant is questioned by the judge.  The defendant

19   has independent counsel, like you've had Mr. Chorny advise you,

20   and then the defendant nevertheless on appeal says:  I, I never

21   would have -- I never would have stuck with a conflicted

22   attorney and had some third-party attorney do a cross-examine

23   of such an important witness.  You know, I'm not, you know, I'm

24   not commenting on the defendants in these cases, on the

25   credibility, but the court's basically said in these cases,

```
 1   anyway saying:  No, no, you were questioned in court, you had
 2   an independent attorney explain all this to you, nothing
 3   confidential.  I mean, you get what I'm saying?  If you have an
 4   issue with this, we need to get it -- it needs to be raised and
 5   dealt with prior to the trial, okay?
 6        THE DEFENDANT:  Yes, sir, yeah, I don't have any
 7   issues.
 8        THE COURT:  All right.  So it is important that we get
 9   -- again, I think to have an independent attorney on the case
10   and he or she may not have to do very much right now until we
11   get through these suppression motions.
12      Yes, Mr. Walters?
13        MR. WALTERS:  A couple of things, Your Honor.  And I
14   certainly don't mean to belabor this point, I certainly
15   understand what the court's ruling is and its decision, but I
16   do -- if the court is going to order this, and we'll see what
17   Judge Martinez thinks about this as well, but at this point,
18   the government also doesn't feel comfortable even if there is a
19   third-party attorney being involved with things like trial
20   strategy and things like that because if there is a conflict
21   and that's why Mr. Loncar cannot cross-examine Brandon
22   Koistinen, then I don't think it's appropriate for Mr. Loncar
23   to have discussions about trial strategies and
24   cross-examination strategies about that witness either.
25      And what I'm specifically referring to is in the
```

1    Lorenzana-Cordon case, the court explained that the conflicted

2    attorney would handle all matters related to the defendant, the

3    trial, discussions, pleas, and sentencing, but would not be

4    involved with any matters relating to the witness's testimony

5    at the defendant's trial.

6        I think certainly one way that could be read, which is --

7    which would be to say that the third-party attorney would

8    handle cross-examination, opening statements, and closing

9    arguments as it relates to that specific witness.  I think

10   another way that that also could be read is if there a Chinese

11   wall when it comes to this witness, there is a Chinese wall

12   when it comes to that witness, and that means they can't have

13   any discussions, period, about that specific witness, whether

14   it be cross-examination strategies, overall trial strategy as

15   it relates to that specific witness because then that would

16   defeat the purpose of having this Chinese wall.  It would

17   defeat the purpose of creating this situation to alleviate the

18   conflict if Mr. Loncar's still going to be involved in talking

19   about how to cross-examine, for example, Brandon Koistinen.

20       So I will just, I'll leave it, I'll leave it at that, Your

21   Honor.  And, like I said, I don't mean to belabor, so that's

22   all I have.

23       The other thing I wanted to correct, Your Honor, is when I

24   stated earlier that district courts have held that doubts

25   should be resolved in favor of disqualification, that seemed to

1    do -- that came from *United States v Locascio*, 357 F.Supp.2d,

2    536.  That seemed -- when I read it again, that seemed to do

3    more with a prior lawyer testifying against or a lawyer

4    testifying against a former client.  And I think that that

5    would certainly raise the bar in terms of why that -- why that

6    presumption of disqualification would exist if there are any

7    doubts.

8        So I don't want to continue down the path of that if there

9    are any doubts, it must be resolved in favor of

10   disqualification because I think that was talking about a

11   different situation than we have here.

12             THE COURT:  Okay.

13             MR. LONCAR:  And, Your Honor, we can abide any

14   restrictions that the court deems appropriate --

15             THE COURT:  Okay.

16             MR. LONCAR:  -- as far as what this wall would be and

17   have no objection even to Brandon and Mr. Harwin having input

18   on what those restrictions could be.  Within reason, I mean,

19   obviously but, you know, I think there has to be at least some

20   minimal discussion to avoid inconsistent, which, I mean, maybe

21   this is really just coming to me at the moment but maybe that

22   second counsel, after reviewing independently the materials,

23   could provide, you know, their proposed questions to me and

24   then I could just verify that none of it would be harmful or

25   inconsistent with overall trial strategy.  That seems like

1    maybe a good, a good process where I'm -- but, like I said, it

2    just came to me 10 seconds ago so I'm sure people can come up

3    with better ideas.

4            THE COURT:  Okay.  I was just looking at

5    *Lorenzana-Cordon* because I feel like one of these cases had a

6    comment about obviously the independent attorney's going to

7    have to talk a little bit about trial strategy.  But we can

8    come up with those once we get an attorney.

9            MR. WALTERS:  Your Honor, that's in pincite 134 of

10   *Lorenzana* where it says the court did allow them to discuss

11   overall strategy.  And that's not really the issue that we

12   have, it would be strategy specifically related to Brandon.

13   But that part that the court, I think, is looking for is right

14   above where the heading is Legal Standard.  There's a little

15   paragraph at the end and it's the last paragraph of that

16   section before the second heading, which is Legal Standard, and

17   that's where -- it's like the first-to-last sentence or

18   second-to-last sentence.

19           THE COURT:  The only other thing I wanted to mention,

20   and this is in *Lorenzana-Cordon*, is one of the reasons that

21   court allowed independent counsel to solve a conflict problem

22   was the -- it was -- that situation was distinguishable by

23   cases cited by the government because the conflict doesn't

24   permeate the entire case, and I think that's very true here.  I

25   mean, the matters are not remotely related and, at least from

```
 1   what I've heard, the -- Mr. Brandon Koistinen's testimony is
 2   very limited, at least his proposed testimony.  He appears to
 3   have no information on the or won't be questioned about the
 4   instant charges, nor is the -- I mean, I don't know if this
 5   third-party attorney is going to be able to get into this
 6   impeachment stuff that Mr. Loncar has mentioned but other than
 7   that, the state trial is not going to come into play or those
 8   charges are not going to come into play in this trial.
 9        So, you mentioned that the district court, I don't plan to
10   -- I mean, you made -- you didn't make a motion to disqualify
11   Mr. Loncar, you asked me to look into the -- make an inquiry.
12   And I've done that.  And I'm, I guess, continuing to do that.
13   So if I guess if, you know, if you want to appeal, you can
14   appeal but I don't plan on doing a report and recommendation.
15             MR. WALTERS:  No, Your Honor.  The only reason I
16   brought up Judge Martinez is that it's obviously possible that
17   she may not be okay with the court's arrangements.  And that's
18   the only reason I brought it up.  I don't -- I don't plan to --
19   I don't think there's anything to appeal because, you're right,
20   we didn't file a motion.  We asked the court to conduct an
21   inquiry and the court has obviously done that, so --
22             THE COURT:  Okay.  I just want to make -- yeah, I
23   mean, it's certainly possible she may not want to do this
24   situation, especially breaking up openings and closings if
25   necessary, but, again, I just -- I think booting Mr. Loncar now
```

1    is just not warranted or, frankly, fair to Mr. Koistinen.

2        So, let's do this, I guess Mr. Katsarelis is not going to

3    make it back, which is fine.  We will send you guys an email

4    where we can get everybody here, Mr. Katsarelis and Mr. Harwin

5    and Brandon present.  Obviously we'll work with your trial

6    dates, Mr. Loncar, and make it as convenient as possible.

7    Mr. Chorny, hopefully you can be here as well.  If it's not

8    Mr. Katsarelis and it's someone else who's going to be the

9    independent counsel, then obviously just make sure the proposed

10   date or dates work with that attorney.

11       So -- okay.  So, Mr. Koistinen, I'll be asking you similar

12   questions, maybe some additional questions once you've actually

13   retained this additional attorney but it sounds like you've had

14   lengthy conversations with Mr. Chorny about this conflict, and

15   your strong preference is to have Mr. Loncar on your case; is

16   that right?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  Okay.  Even if that entails him not being

19   able to do the cross-examination and perhaps not even talk with

20   the other, the new attorney on any matters relating to that?

21            THE DEFENDANT:  Yes, Your Honor.

22            THE COURT:  Okay.

23            THE DEFENDANT:  Yep.

24            THE COURT:  You understand why that could -- I mean,

25   well, we can talk more about it later.

1       So, okay, do you want this letter made part of the record?

2   Probably should be, I think.

3              MR. LONCAR:  I'm okay with it being -- we've signed

4   several copies so Mr. Chorny and I will each have one,

5   Mr. Koistinen will have one, the court can have that one or --

6              THE COURT:  Would you just -- can we just enter this

7   or should Mr. Loncar file it?

8              CLERK:  I think Mr. Loncar maybe should file it,

9   Judge.

10             THE COURT:  Okay.  Maybe you can just file like a

11  one-sentence pleading attaching this just so it's part of the

12  record.  I'll keep it, though, so -- okay.

13             MR. LONCAR:  I can do that.  Under seal or --

14             THE COURT:  It's up to you.  That's fine if you want

15  to do it under seal, it's fine with me.  Yeah, I mean, yeah, I

16  mean, you can do it under seal, that's fine.

17     Okay.  So our game plan is we're going to hold October 2nd

18  and/or 3rd for the suppression hearings, and then we're going

19  to get everybody together once an independent counsel has been

20  retained.

21     Okay?  Anything further?

22             MR. CHORNY:  On the subject of things to be filed,

23  shall I file a notice of appearance and just specify that it

24  was for the limited purpose of counseling Mr. Koistinen on the

25  conflict?  Is that necessary?

1    THE COURT:  Yeah, it's probably best so the record is

2  clear, sure, that would be great, Mr. Chorny.  Thank you.

3    MR. CHORNY:  No problem, Your Honor.

4    THE COURT:  All right.  Okay.  Anything else?

5    MR. LONCAR:  Yes, Your Honor.  Well, we are also, I

6  guess we're not necessarily here on the issue of detention but

7  obviously Ms. Romero's here, the pretrial addendum has been

8  filed yesterday, and so I don't know if the court has --

9    THE COURT:  Yeah, I -- thank you for bringing that up.

10  I had forgotten about that even though I saw Ms. Romero sitting

11  there.  Yeah, pretrial is still recommending detention based on

12  the living -- well, not just the living situation but that --

13  'cause that's just -- because of the Adam Walsh Act, that's

14  just a -- that's an issue.  So I'll deny the motion for

15  reconsideration and we'll go from there.

16    MR. LONCAR:  Your Honor, I did discuss just today so

17  one of my client's rental properties is becoming available,

18  they're moving out tomorrow, and so that would void the issue

19  of him being at home with his two-year-old daughter, if that

20  was the reason, and so --

21    THE COURT:  Well, why don't we do this, I'll deny the

22  motion for you to have leave to refile it and you can set forth

23  in the motion where that residence would be and so forth 'cause

24  pretrial's going to have to do the same thing regarding

25  electronic monitoring and then they also have to do the check

UNITED STATES DISTRICT COURT

```
 1   of schools and parks and so forth.  So if you file a motion

 2   giving pretrial that information, they can look into it.

 3             MR. LONCAR:  Thank you, Your Honor.

 4             THE COURT:  Okay.  All right.  Thanks, all.  See you

 5   guys hopefully in the next week or two.

 6             MR. CHORNY:  Thank you, Your Honor.

 7             THE COURT:  Thank you, have a good weekend.

 8        (The matter was concluded at 11:57 a.m.)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    C E R T I F I C A T E

2

3

4        I, Cindy J. Shearman, court-approved transcriber,

5   certify that the foregoing is a correct transcript from the

6   official digital sound recording of the proceedings in the

7   above-entitled matter to the best of my ability.

8

9

10   __s/Cindy J. Shearman_____          August 25, 2025_
     Cindy J. Shearman, RDR, CRR, CRC            Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25