**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

United States of America,
Plaintiff,
vs.
Jeffrey Allen Koistinen,
Defendant.

**No. CR-23-01495-TUC-AMM (EJM)**

**REPORT AND RECOMMENDATION**

Pending before the Court is the defendant's Motion to Suppress Post-Arrest Statements and Fruits. (Doc. 119.) The defendant argues that his custodial statements to law enforcement should be suppressed because he was never advised of his *Miranda* rights, and even if he had been advised of his rights, he invoked his right to remain silent and right to counsel. In its Response, the government represents that "it will not seek to introduce the defendant's statements in its case-in-chief at trial." (Doc. 120.) However, the government argues that because the defendant's statements were voluntarily made, it "reserves the right to use the defendant's statements for impeachment purposes should the defendant elect to testify." (*Id*. at 2.) Defense counsel did not file a Reply addressing the government's voluntariness argument.

As discussed below, it is undisputed that the defendant invoked his *Miranda* rights at the outset of his interaction with law enforcement prior to his arrest. It is also undisputed that the defendant was never advised of his *Miranda* rights after he was in custody and prior to questioning by law enforcement. For those reasons, the Court recommends that

the District Court grant the instant motion and preclude the government from admitting the defendant's statements during its case-in-chief at trial. However, the Court finds that the defendant's statements were voluntarily made. As a result, the Court recommends that the District Court permit the government to use the statements for impeachment purposes if the defendant testifies at trial.

## I. FACTUAL BACKGROUND

### *A. The Pending Charges*

The defendant is charged in an eleven (11) count Indictment dated September 27, 2023, with the following offenses: (1) Attempted Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) & 2251(e) (Counts 1, 3, 5, 7, and 9); (2) Attempted Coercion and Enticement, in violation of 18 U.S.C. § 2422(b) (Counts 2, 4, 6, 8, and 10): and (3) Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) & (b)(1) (Count 11). (Doc. 13.)

### *B. The Instant Motion*.

On August 26, 2026, the Court held a status conference on the instant motion. The Court asked defense counsel if he was challenging the government's contention that the defendant's statements were voluntarily made. Counsel represented that he was making that challenge; his argument is that the statements cannot be used for any purpose. The Court ordered supplemental briefing on the issue of voluntariness because the government did not address the law or facts that support its voluntariness argument, and defense counsel did not file a Reply to address voluntariness.

The Court also asked counsel if they believed that an evidentiary hearing was necessary on the issue of voluntariness. Counsel chose to rely on the testimony and evidence presented at the evidentiary hearing on the prior motions to suppress. As a result, the Court will rely on that record in resolving the instant motion.[1]

---

[1] The record consists of the following: (1) the transcript of the testimony presented at the evidentiary hearing on the prior motions to suppress; (2) the exhibits admitted at that hearing, including Officer Hengsteler's and Officer Duarte's body camera footage (Ex. 11 and Ex. 12 respectively); and (3) two exhibits attached to the instant motion – a transcript of the audio of Officer Hengsteler's body camera footage (Ex. A), which was also admitted

### C. ***The Factual Record Before the Court***.

On August 17, 2022, at approximately 6:20 p.m., TPD Officer Phillip Hengsteler performed a traffic stop of the defendant's white Tesla. (Hr'g Tr. 2/23/2026 at 19–20, 27, 98–99). The defendant was driving and his wife was in the front passenger seat. (*Id*. at 19, 27, 99.) Officer Hengsteler had the defendant step out of and away from the vehicle; however, he did not place the defendant under arrest at that time. (Def. Ex. 11 at 00:42; Hr'g Tr. 2/23/2026 at 99; Ex. A to Doc. 119.)

Officer Hengsteler was aware that the defendant had an attorney because he told the defendant that "we're already talking to him[.]" (Ex. A to Doc. 119.) The defendant told Officer Hengsteler that "[w]e were told [b]y our attorney don't say anything to you guys." (Id.) Officer Hengsteler responded: "Hey, that's your constitutional right." (*Id.*) Officer Hengsteler told the defendant that "we're just going to hang out" until he gets word "from the bosses and the detectives." (*Id*.) He also told the defendant that he is not going to put him "in handcuffs right now, but I may have to." (*Id*.) In response to the defendant's comment that Officer Hengsteler "has no reason" to handcuff him, Officer Hengsteler said: "Well what I'm hearing is technically you might be under arrest, so I don't want to do that." Officer Hengsteler advised the defendant that he is "being detained." (*Id*.)

For officer safety reasons, Officer Hengsteler asked the defendant's wife to give him her purse and phone; he told her that he was not going to search her purse. (Def. Ex. 11 at 10:40; Hr'g Tr. 2/23/2026 at 103; Ex. A to Doc. 119.) The defendant's wife gave Officer Hengsteler her purse and a cell phone with a red case. (Def. Ex. 11 at 11:10; Hr'g Tr. 2/23/2026 at 103.) Officer Hengsteler also asked the defendant's wife where the defendant's phone was located. (Def. Ex. 11 at 11:20; Def. Ex. 13 at 3; Hr'g Tr. 2/23/2026 at 105; Ex. A to Doc. 119.) She looked around the inside of the vehicle and said, "I don't know." (Def. Ex. 11 at 11:20; Def. Ex. 13 at 3; Hr'g Tr. 2/23/2026 at 105; Ex. A to Doc. 119.)

At some point after Officer Hengsteler's conversation with the defendant's wife, he

---

as an exhibit at the evidentiary hearing (Gov. Ex. 13), and a transcript of the audio of Officer Duarte's body camera footage (Ex. B.) which was not.

advised other officers at the scene that the defendant was under arrest, but his wife was not. (Ex. A to Doc. 119 at 3; Def. Ex. 13 at 3.) Marana Police Officer Duarte also advised the defendant that he was under arrest; he then handcuffed the defendant, searched him, and placed him in the back of a patrol vehicle. (Def. Ex. 12 at 3:25, 5:40, 6:40; Hr'g Tr. 2/23/2026 at 99; Ex. B to Doc. 119.)[2] Officer Hengsteler asked the defendant "where his phone was" and the defendant responded, "either in the car or 'she has it[.]'" (Hr'g Tr. 2/23/2026 at 104; Ex. A to Doc. 119.) Officer Hengsteler did not read the defendant his *Miranda* rights before asking about the phone. (Hr'g Tr. 2/23/2026 at 109.)

Officer Duarte later asked the defendant if he had his house keys and whether there were dogs at his house, which was the subject of a state search warrant. (Def. Ex. 12 at 10:00; Ex. B. to 119.) The defendant said that he did not have his house keys, but he had dogs at his house. (Ex. B to Doc. 119.) Officer Duarte asked the defendant to explain how to open the gate where the box trailer is located on the property. (*Id.*) The defendant explained how to open the gate.[3] (*Id.*) Officer Duarte relayed that information to officers who were executing the search warrant at the defendant's residence. (Def. Ex. 12 at 42:45; Ex. B to Doc. 119.)[4]

## II. DISCUSSION

When a defendant's statement is obtained in violation of *Miranda*, the government may not use the statement in its case-in-chief at trial. *Pollard v. Galaza*, 290 F.3d 1030, 1033 (9th Cir. 2002). The evidence is undisputed that the defendant invoked his *Miranda* rights even though he was not advised of those rights after he was in custody (or at any point). As a result, the government cannot use the defendant's statements in its case-in-chief at

---

[2] Officer Duarte was not a witness. His body camera footage was admitted into evidence without objection, but it was not played in court.

[3] In the motion to suppress, defense counsel does not set forth the statements he seeks to suppress. In his supplemental brief, defense counsel only refers to the statements regarding the phone.

[4] Although there was no testimony on this point, the government does not contend that the defendant was advised of his *Miranda* rights prior to the conversation about his keys, dogs, and the gate.

trial.

When a defendant chooses to testify at trial, the otherwise-excludable statement may be used for impeachment purposes if the government proves by a preponderance of the evidence that the statement was voluntarily made. *See Michigan v. Harvey*, 494 U.S. 344, 351 (1990); *Pollard*, 290 F.3d at 1033; *Lego v. Twomey,* 404 U.S. 477, 489 (1972). If a statement is found to be involuntary, then it is inadmissible for all purposes. *Pollard*, 290 F.3d at 1033.

A defendant's statement is voluntary if it is "the product of a rational intellect and a free will." *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960). As a result, the statement "must not be extracted by any sort of threats or violence, nor obtained by any direct or indirect promises, however slight, nor by the exertion of any improper influence." *Malloy v. Hogan*, 378 U.S. 1, 7 (1964). A statement is involuntary whether coerced by physical intimidation or psychological pressure. *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981).

In determining the voluntariness of a statement, a court "examines whether a defendant's will was overborne by the circumstances surrounding the giving" of the statement. *Dickerson v. United States*, 530 U.S. 428, 434 (2000). "The due process test takes into consideration the totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation." *Dickerson*, 530 U.S. at 434. "The length of the questioning, the use of fear to break a suspect, [and] the youth of the accused are illustrative of the circumstances on which cases of this kind turn." *Id.; see Ashcraft v. Tennessee,* 322 U.S. 143, 149-150 (1944) (statement involuntary where the police questioned the defendant for 36 hours straight); *Tingle*, 658 F.2d at 1335-1336 (statement involuntary because officers recited a litany of maximum penalties for the crimes, stated that the suspect would not see her child for a while, and warned the suspect that if she did not cooperate the prosecutor would be informed that she was "stubborn or hard-headed."); *United States v. Jenkins*, 938 F.2d 934, 940 (9th Cir. 1991) (statement given hours after suspect was beaten and threatened with death by the police was involuntary).

Unusually low intelligence or other mental deficiencies may also be an important factor for a court to consider. *United States v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014).

The government contends that the defendant's statements were voluntarily made, and therefore, may be used for impeachment purposes if he testifies at trial. In its Supplemental Brief, the government argues that "[s]imply feeling pressure inherent in any police interview is not enough" to show that statements were involuntarily made; "the evidence must reflect a substantial element of coercive police conduct" which is not present in the case at hand. (Doc. 128 at 4.) The government points to the following facts that demonstrate that the defendant's statements were voluntary: (1) the defendant is a mature and experienced individual and is a wealthy businessman; (2) he is not unfamiliar with the dynamics of police questioning because he has had prior exposure to law enforcement;[5] (3) there is no indication of intoxication, impairment, substance abuse-related vulnerabilities, or diminished mental or physical capacity; (4) his response to questions were coherent and logical and he did not appear to be confused; (5) the defendant did not appear to be in distress or discomfort; (6) officers did not make any direct or implied promises; and (7) officers did not make threats or employ any coercive practices. (*Id*. at 3.)

Contrary to defense counsel's representation at the status conference, in his supplemental brief counsel now represents that "Mr. Koistenen is not seeking suppression of his post-arrest statements for the limited purpose of impeachment of any inconsistent statement he may give at trial." (Doc. 126 at 7.) Counsel also represents that the defendant "is not, by this motion, seeking to have physical fruits excluded because of this violation of his *Miranda* rights" because "there are no physical fruits of this poisonous tree." (*Id*. at 8.) Finally, counsel represents that he is not "challenging whether [the defendant] consented to a search; he did not." (*Id*. at 9.) Counsel's sole argument is that "[o]utside the above-referenced exceptions, Mr. Koistenen's statements – obtained in violation of his

---

[5] The government has not pointed to evidence in the record that supports its arguments that the defendant is a mature and experienced individual, a wealthy businessman, or that he is familiar with police questioning. As a result, the Court cannot rely on those facts in the voluntariness analysis.

*Miranda* rights – must not be used against him for any other purpose . . . not explicitly provided for by law." (*Id*. at 10.)

The Court first notes that it is unclear what "other purpose" the statements would be used for and why exclusion of those statements would be warranted. What is clear is that the defense has abandoned its challenge to the government's use of the defendant's statements for impeachment purposes, which is the only issue before the Court. Nevertheless, the Court will still assess whether the defendant's statements were voluntary.

The body camera footage reflects that the officers' interactions with the defendant could not have been more cordial and respectful.[6] Officers did not coerce or threaten the defendant to get him to respond to questions. Nor did officers use physical force, fear tactics, or psychological pressure. Officers did not make any direct or indirect promises to the defendant, and they did not exert any improper influence. Additionally, both the length of questioning and the questioning itself were brief. The defendant's responses to questions were coherent and logical and he did not appear to be confused or in distress or discomfort. Finally, defense counsel has not suggested that the defendant's intelligence is an issue or that he has any mental deficiencies or substance abuse issues.

Based on these facts, the Court concludes that the defendant's statements were voluntarily made. Therefore, it is recommended that the District Court permit the government to use the defendant's statements for impeachment purposes if he testifies at trial.

## IV. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge RECOMMENDS that the District Judge GRANT the Defendant's Motion to Suppress and prohibit the government from using his statements during the government's case-in-chief at trial. The Court also RECOMMENDS that the District Court allow the government to use the defendant's statements for impeachment purposes if he testifies at trial.

---

[6] It is worth noting that Officer Hengsteler acknowledged the defendant's right to remain silent and told the defendant that he respected the Constitution. Additionally, no officer asked the defendant any questions about the crimes being investigated.

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. No reply shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CR-23-01495-TUC-AMM (EJM).**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

Dated this 15th day of September, 2026.

Eric J. Markovich
United States Magistrate Judge